### FRANCES NADRA v. FREDERICK NADRA.

*Divorce—Fraud—Appeal.*

1. The failure of a complainant to appeal from a decree dismissing her bill for divorce will not preclude her from resisting the claim of the defendant to a decree declaring the marriage void for fraud practiced upon him, he having prayed for such affirmative relief in his answer.

2. Complainant filed a bill for divorce on the ground of extreme cruelty, and the defendant answered, praying affirmative relief, and that the marriage be decreed void for fraud practiced upon him by complainant in securing it. Relief was denied to *both* parties, and defendant appealed, and the decree is modified so as to annul the marriage. Only questions of fact are involved.

Appeal from Wayne. (Reilly, J.) Argued January 31, 1890. Decided February 20, 1890.

Bill for divorce. Defendant appeals. Decree modified so as to annul the marriage. The facts are stated in the opinion.

*Larned & Larned,* for complainant.

*Thomas Hislop (Edwin F. Conely,* of counsel), for defendant.

CAMPBELL, J.    On January 10, 1889, Frances Nadra filed her bill for divorce, against Frederick Nadra for extreme cruelty; the chief ground being his charging her with unchastity with other men, and denying the paternity of her child, and forcing her, by immediate show of violence, to sign a confession to that effect.

Frederick Nadra filed an answer, containing allegations for specific relief, in which he charged that when he married her she was pregnant by another person, and that he did not discover it till January 6, 1889, when she confessed it, and they practically separated, and on January 8, 1889, she gave him a written confession, and returned to her mother's.    Nadra at once consulted counsel in preparation for a bill, and Mrs. Nadra filed her bill on January 10, which he met as stated.    The marriage took place June 12, 1888, and the child was born December 5 thereafter.    It was a child born after nine months' pregnancy.    Complainant avers it was Frederick Nadra's child from antenuptial intercourse.    Frederick Nadra denies any such intercourse before marriage.    The court below dismissed the case as against both parties, and Frederick Nadra only appeals.

His appeal is based on the denial of affirmative relief to him.    The whole controversy turns on the facts relating to the paternity of the child.    No question is raised on the pleadings on either side, and as the answer of Frederick was responded to as a bill would have been, and the testimony was taken on the issues raised, it becomes a mere question of evidence.    We do not regard the failure of Mrs. Nadra to appeal from the dismissal of her own bill as precluding her from resisting Frederick's claim to a degree declaring the marriage void for the fraud on him.    She cannot be entitled to a divorce herself in the cause.    But whether the marriage shall be declared void is another question.

We are not informed on what ground a decree was denied to Frederick. If he was held to be the father of the child, it was extreme cruelty of the worst kind to charge his wife with palming off on him offspring not born between them, and compelling her to sign an admission of an offense of which she was not guilty against him, and if her story was true she ought to have had relief. But if it was not true, and if she was not entitled to relief, we can see no reason why the marriage should not have been annulled. The testimony was conflicting, but one or the other results seems to us necessary. It would be dangerous to give conclusive effect to every written confession which would bastardize a child, and convict the mother of incontinence with others than her husband. But, on the other hand, while experience has shown that men have extorted such confessions from the fears of their wives, nevertheless, if not so extorted, they are not to be disregarded, and they may be convincing.

The confession before us was, as Mrs. Nadra swears, written out in full in her own handwriting. That is hardly the meaning of the charge in her bill that he compelled her to sign such a paper, and the fact that she made her mark to the bill would favor the idea that she or her counsel did not mean that such an inference should be drawn. The handwriting is remarkably good, and entirely free from any signs of nervous agitation. Few persons write so good a hand, and it appears perfectly natural. It was claimed on the argument that persons accustomed to write retain the steadiness and clearness of their handwriting in spite of agitation. That is possible, but the appearance is a circumstance that cannot be separated from the other circumstances.

It would do no good to spread out for our Reports details which would throw no light on any law question.

We are entirely satisfied that it was not until Frederick became convinced that the child could not possibly have been the fruit of their married connection that he was satisfied he was not the father of it, and at once repudiated it. We are not disposed to underrate the cruelty of complainant's position, or her desire to avoid public exposure. That she confessed the true state of things when charged with it, on January 6, 1889, we have no doubt; and it is clear to us that Frederick at once insisted on a separation, and that the written confession was not the result of his threats, but was a voluntary act on her part, to manifest her regret for what she had done, and to bring about what she supposed could be done,—a separation without legal process,—and make less scandal. It is fairly to be gathered from the record that the original bill was filed against the husband in a race of diligence to anticipate his action, and with an idea that he might accept a divorce without direct action on his part. There can be no doubt, we think, that he consistently proposed to bring the matter to legal decision, and would have filed his own bill except for the haste of complainant,—or, more apparently, that of the guilty instigator of her conduct. We cannot allow compassion for the woman who was weak as well as erring, and who was evidently not without sensibility, to blind us to the fact that her husband was led to marry her in ignorance of her pregnancy, and was so defrauded into what no decent person could have consented to.

We think the decree should be so modified as to declare the marriage null and void from the beginning; and, this being so, the case is not one for any allowances to complainant, Frances. No costs are given to either party.

CHAMPLIN, C. J., MORSE and GRANT, JJ., concurred. LONG, J., did not sit,