KOEHLER *v.* KOEHLER.

## Opinion delivered February 17, 1919.

1. DIVORCE—GROUND—CONCEALMENT OF VENEREAL DISEASE.—Concealment of the fact that one the contracting parties had a venereal disease at the time of her marriage is not a ground for divorce in Arkansas.

2. MARRIAGE—ANNULMENT FOR FRAUD—DIRECT PROCEEDING.—Where fraud in contracting marriage is the ground of relief, a suit to annul the marriage, and not one for divorce, is the proper remedy.

3. DIVORCE—CROSS RELIEF ON GROUND OF FRAUD.—Where, in a wife's suit for divorce, the husband asked a divorce by way of cross relief for the wife's fraud in concealing the fact that she had a venereal disease, the cross-complaint will be treated as if defendant had prayed for annulment of the marriage.

4. MARRIAGE—ANNULMENT FOR FRAUD—CONDONATION.—Where a husband continued to live with his wife for a year after he knew she was infected with a communicable venereal disease, he will be held to have waived the fraud and will not be entitled to annulment of marriage on its account.

5. DIVORCE—CRUELTY.—A wife whose husband continually called her vile names, accompanied with oaths, for more than a year before their separation, is entitled to a divorce.

6. HUSBAND AND WIFE — SEPARATION AGREEMENT.—A separation agreement between a husband and wife, made after their separation, if it is fair to both parties and has been performed, will be upheld by the courts.

7. DIVORCE—ATTORNEY'S FEE—AMOUNT.—In a suit by a wife for divorce, the husband being a mail carrier and without other means than his salary, the wife's attorneys will be allowed an additional fee of $25 for their services on appeal.

Appeal from Garland Chancery Court; *J. P. Henderson,* Chancellor; reversed.

### STATEMENT OF FACTS.

This is a suit for divorce brought in the chancery court on November 15, 1916, by Mary Koehler against Robert Koehler on the statutory ground of cruel and barbarous treatment. On October 18, 1917, Robert Koehler filed an answer and cross-complaint. He denied the allegations of the complaint, and asked for a divorce himself

on the ground that plaintiff fraudulently concealed from him that she was afflicted with an incurable venereal disease at the time she married him.

According to the testimony of the plaintiff herself, she was a widow with one child, a daughter, when she met the defendant in Hot Springs, Arkansas, where they both resided.  She married the defendant in July, 1911, and they lived together as husband and wife in Hot Springs, Arkansas, except for a temporary absence on her part, until they separated on the 11th day of November, 1916.  She was a rooming house keeper when she married the defendant and continued that occupation for about three and one-half years, when on account of ill health she sold out and with her husband's consent went to Chicago to visit her sister and stayed there about five months.  For some time prior to the time she went to Chicago, defendant had been accustomed to cursing and abusing her.  This was kept up from day to day.  He called her a whore, a fool, and a thief continually, and these epithets were accompanied with oaths.  After she returned from Chicago, they got along very well for two or three months.  Then he again commenced to curse and abuse her almost daily, using the same vile epithets as before.  This course of ill treatment continued without interruption for about one and a half years until they separated.  She never gave him any cause for his cruel treatment but on the contrary was a hard working wife and greatly assisted her husband in making a living.  On the night they separated, her husband demanded some money of her and when she refused to give it to him, he hit her two severe licks on the face, which rendered her unconscious.  Mary Jackson, the daughter of plaintiff by her first husband, was sixteen years old when they separated, and had lived with them during their married life.  She corroborated in every respect the testimony of her mother, and told how the defendant continually called her mother a whore and a thief in her presence and said the epithets were usually accompanied with oaths, that defendant habitually cursed and abused her mother in

her presence for more than one year prior to their separation. This bad treatment of her mother was not brought about by anything done or said by her mother. Mary ran into her mother's room the night defendant struck her. The blows rendered her mother unconscious. She asked defendant if he was not sorry that he had struck her mother. He replied that he was not; that her mother was a good actor and was putting on.

According to the testimony of the defendant, he did not strike the plaintiff on the night of their separation; but left her because she admitted to him that she had syphilis. He said that they got along well for several months after their marriage; and that she then accused him of being out with whores. That his wife and another woman would go out together and meet men for the purpose of having sexual intercourse.

Several physicians testified that they had treated plaintiff for syphilis and that she had it in its tertiary stage. That she had had it for eleven years or more. One of them stated that her condition was such that her husband was likely to contract it by having sexual intercourse with her.

There was, also, evidence tending to show that defendant knew that plaintiff had syphilis and was being treated for it for some time before their separation. This evidence will be stated under its appropriate heading in the opinion. After their separation the parties entered into a separation agreement with regard to their property rights. This will also be stated and referred to in the opinion.

The chancellor was of the opinion that the plaintiff failed to sustain her case by the proof; that the defendant had sustained his allegations of fraud in the procurement of the marriage; that the separation agreement was a fair settlement of the property rights of the parties; that the plaintiff's attorney was entitled to a further allowance of $25 as attorney's fees. A decree was entered accordingly and the plaintiff has appealed.

*R. G. Davies,* for appellant.

1.   The evidence brings the case clearly within the rule stated in 149 S. W. 86-88; 44 Ark. 429; 38 *Id.* 119. The chancellor erred (1) in not granting appellant a divorce; (2) in sustaining the contract as a settlement of property rights and alimony; (3) in granting a divorce to appellee or declaring the marriage contract void and (4) in not investigating the claim of defendant that plaintiff was insane.   Cases *supra.*   The falsity of the charge of having contracted a venereal disease is sufficient ground for a divorce and constitutes cruel treatment and indignities charged by defendant.   97 Ark. 643; 72 Ark. 355; 38 *Id.* 156.

. 2.   The contract to pay so much provided a divorce was granted was collusive.   Kirby & Castle's Digest, § 2894; 14 Cyc. 647 and notes.

3.   The court has no jurisdiction in a divorce case to go outside the statutory grounds and exercise inherent chancery powers not provided by statute.   103 Ark. 571; 14 Cyc. 593, VII A. 2.   This was a divorce case purely and alone.   A statutory offense was alleged and proved. The defense in the cross-bill was not a statutory ground and it was error to grant the relief prayed.   Syphilis is a *curable* disease and it is not contagious in the tertiary degree.   It is probable that whatever disease plaintiff had after her marriage was caused by defendant.   14 Cyc. 590.   See also 78 Am. St. Rep. 501.

It is proper for the Supreme Court to grant alimony and support together with attorney's fees on appeal.   80 Ark. 451; 97 S. W. 659; 133 *Id.* 813; 24 Ark. 522.

*J. A. Stallcup* and *A. J. Murphy,* for appellee.

The finding of the court that Mrs. Koehler was afflicted with an incurable venereal disease is sustained by a preponderance of evidence.   She concealed this fact from defendant.   The reasons given and cases cited in the chancellor's opinion are convincing and his findings and decree should not be disturbed.

The agreement as to allowance to plaintiff is reasonable and he has not asked to cancel same. Attorney's fee properly allowed. 9 R. C. L. 296, § 64. Alimony and attorney's fees should not be allowed her here.

HART, J., (after stating the facts). The concealment of the fact that one of the contracting parties had a venereal disease at the time of the marriage is not a ground of divorce in this State. The relief sought by the defendant was an annulment of the marriage on the ground of fraud, and the question of the nullity of the marriage should usually be made the subject of a direct proceeding for that purpose. 26 Cyc. 907-8. But a decree annulling a marriage may be entered in a proper case, although the relief asked is a divorce; and the defendant in a divorce proceeding may allege the nullity of the marriage and have a decree on proper proofs. 26 Cyc. 900; *Bassett* v. *Bassett,* 9 Bush. (Ky.) 696 and *Nadra* v. *Nadra,* 79 Mich. 591, 44 N. W. 1046. So, although the defendant asks for a divorce in his cross complaint, we will treat it as if he had prayed for an annulment of the marriage. The defendant proved by several physicians who had thoroughly examined and treated the plaintiff that she had syphilis in its tertiary stage and had had it for eleven years or more. One of them testified that she was incurable and that her condition was such that she might communicate it to her husband by having sexual intercourse with him. That she concealed from him that she had this disease prior to their marriage. Therefore, he contends that this is ground for the annulment of the marriage on the ground of fraud. The authorities on this question are in direct conflict, and we do not deem it necessary to decide it, for the reason that we think that a waiver of his rights to the annulment of the marriage on this ground sufficiently appears from the record.

According to the testimony of Dr. Martin, he treated plaintiff from the fall of 1915 until mid-summer 1916. He made an examination of her blood, ascertained that she had syphilis, and treated her for that disease. De-

fendant came to him and told him that his wife was sick and wanted him to treat her. He talked with defendant about the treatment to be used. On account of the war, the supply of the treatment for that disease was cut down and he spoke of this to defendant. He never doubted but that defendant understood that he was treating her for syphilis. He talked with defendant from time to time and defendant knew what was being done in the treatment of his wife. Other physicians told of their treatment of plaintiff for the same disease in 1912 and 1914. They do not say that they told defendant that they were treating her for syphilis, but defendant knew that they were treating her. He admits that she told him before their marriage that she had some female ailment and that he consulted a physician about her and that the physician told him that he could cure her. The plaintiff testified that defendant showed her an application for a life insurance policy in which he stated that he had been afflicted with gonorrhea and that it was worse than syphilis. This shows that the defendant had some knowledge about these diseases. It is true the defendant denied any knowledge that plaintiff had syphilis when he married her, but when the testimony of the physician who is not shown to have any interest in the matter whatever, is considered in the light of the other facts and circumstances, we are of the opinion that a clear preponderance of evidence shows that the defendant had the knowledge that his wife had the syphilis for at least a year prior to their separation. This being true he is not entitled to an annulment of the marriage. He continued to live with his wife for a year or more after knowledge that she had syphilis, which he knew to be a communicable disease, thus affirming the marriage relation notwithstanding the fraud, and is therefore barred of any action for annulment. Hence, we think the facts presented by the record show a waiver of the fraud, which is claimed was the basis of the action for annulment.

This brings us to the question of the plaintiff's right to a divorce. But little need be said on this branch of the

case. If her testimony is true and is corroborated, it is sufficient to entitle her to a divorce. According to her testimony he continually called her a whore and accompanied the epithet with an oath. This was done systematically and repeatedly for more than a year prior to their separation. It is true he denies this, but in his testimony, he accuses plaintiff of leaving her daughter and going out for the purpose of having intercourse with men for hire. This shows his mental attitude toward plaintiff. The daughter of plaintiff corroborated her in every respect. She was 16 years old when the separation took place. Her testimony shows that she was of average intelligence. We think a preponderance of the evidence is in favor of the plaintiff and that she is entitled to a divorce.

This brings us to a consideration of the separation agreement. It was made after their separation and after they had decided not to live together again. The plaintiff claims that she was deceived in making it. Her attorneys at the time, however, said that it was thoroughly explained to her and that she fully understood it at the time she signed it. It has been performed by the defendant. No useful purpose could be served by setting it out or commenting in detail upon the evidence relating to this branch of the case. It was fair to both parties and we think the chancellor was right in upholding it. *McConnell* v. *McConnell,* 98 Ark. 193. The defendant is a mail carrier in the city of Hot Springs and has no other means than his monthly salary.

Therefore, the plaintiff's attorneys will be allowed an additional fee of only twenty-five dollars for the services performed by them on appeal.

It follows that the chancellor erred in not granting the plaintiff a divorce, and in granting an annulment of the marriage as prayed for by the defendant. For these errors the decree will be reversed and the cause remanded with directions to the chancellor to enter a decree in accordance with the opinion.